**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MICHELLE KAISER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08-CV-586-TCK-FHM** |
| | ) | |
| **AT THE BEACH, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Before the Court are Defendant's Motion for Decertification of Collective Action (Doc. 86); Plaintiffs' Motion for Partial Summary Judgment (Doc. 83); Defendant's Second Motion for Partial Summary Judgment (Doc. 85); Defendant's Amended First Motion for Partial Summary Judgment (Doc. 104); Defendant's Motion to Limit Plaintiffs' Damages (Doc. 87); and Defendant's Motion in Limine to Prohibit Plaintiffs from Testifying as to Alleged Damages (Doc. 113).

## I.    Factual Background and Procedural History

The parties have filed cross motions for summary judgment, and the following facts are undisputed. Defendant At The Beach, Inc. ("ATBI") is a corporation that owns and operates tanning salons in Oklahoma, Kansas, and Colorado. At certain times relevant to this lawsuit, ATBI's employee handbook explained:

> Nonexempt – All nonexempt employees are paid on an hourly basis and are expected to confine their work to the normal workday and workweek unless their manager authorizes overtime in advance. Hourly paid employees will be paid overtime for all authorized hours worked in excess of 40 hours within a workweek. Workweek is defined as opening of business Monday through close of business Sunday.
> *Exempt – All exempt employees are paid on a biweekly salary basis. Hours worked by salaried employees are often irregular and begin and end beyond the normal workday. Salaried employees are exempt from the overtime provisions of the Federal Wage and Hour Law and do not receive overtime pay.*

("Handbook Policy") (Ex. 2 to Doc. 83 (emphasis added).)  Prior to July 2008, ATBI did not believe that it was required by the Fair Labor Standards Act ("FLSA") to pay its Store Manager and Assistant Store Manager ("managers") any overtime for amounts worked in excess of forty hours per week, and managers were classified as "exempt" employees pursuant to the Handbook Policy. Nonetheless, managers were, on occasion, paid overtime in an amount totaling $64.00 for every additional eight-hour shift worked during a particular pay period.  Prior to July 2008, managers were paid a set salary ranging from $1,100-$1,500 per month and were not required to clock in or clock out.  Managers were also paid bonuses and commissions.

On or around July 2008, the Wage and Hour Division of the United States Department of Labor ("DOL") conducted an investigation of ATBI ("2008 DOL Investigation").  Following such investigation, DOL investigator Barbara Sullivan ("Sullivan") cited ATBI for "failure to pay non-exempt salaried managers overtime wages."  (*See* Sullivan Dec., Doc. 82, at ¶ 6.)  Cindy Stuart ("Stuart"), ATBI's payroll manager and Federal Rule of Civil Procedure 30(b)(6) designee, testified that ATBI's managers were deemed non-exempt by the DOL because such managers' salaries  did not meet minimum amounts required for application of certain FLSA overtime exemptions.  (*See* Stuart Dep., Ex. 1 to Pl.'s First Am. Mot. for Summ. J., at 60 (testifying that DOL concluded that ATBI was not paying managers the minimum $455 per week to qualify for certain exemptions).) Sullivan determined that ATBI owed back wages to 301 employees in unpaid overtime in the total amount of $68,197.08.  On November 3, 2008, Stuart signed a document entitled Summary of Unpaid Wages ("DOL Summary"), agreeing to pay the 301 listed employees the amounts calculated by Sullivan for unpaid overtime.  The DOL Summary contains a "Gross Amounts Due" column. Because ATBI did not require its Managers to clock in or clock out, Sullivan calculated gross amounts due based on a forty-eight hour work week – or eight hours of overtime – for every

employee.  As to the gross amount due, Sullivan stated: "The gross amounts of back wages due to each manager were calculated as follows: Bi-weekly wages  x .83[1] = amount due per employee.  The hourly rate = salary + bonuses + commissions/48."  (*See* Sullivan Decl., at Ex. 1 (footnote in original).)  In order to determine the salary, bonus, and commissions for each employee, Sullivan reviewed payroll records and labor audit reports.  Stuart sent checks for back due wages ("checks") to these employees in amounts consistent with the DOL Summary.  Along with the checks, ATBI sent a Receipt for Payment for Lost or Denied Wages, Employment Benefits, or Compensation, also known as DOL Form WH-58 ("Form WH-58"), which provides that "acceptance of back wages due under the [FLSA] means that you have given up any right you may have to bring suit for back wages."  (*See* Stuart Aff., Ex. 1 to Def.'s Second Mot. for Partial Summ. J., at ¶¶ 5-7; Receipts, Ex. 4 to Def.'s Second Mot. for Partial Summ. J.)[2]  Form WH-58 contains a signature line for the recipient.  In this case, all relevant Form WH-58s provide that the payments are for unpaid wages for the period up to and including July 7, 2008.  Sometime after the 2008 DOL Investigation, ATBI began requiring managers to clock in and clock out.[3]

In October 2008, several ATBI employees brought this action, alleging that: (1) ATBI misclassified them as exempt employees and failed to pay them overtime and minimum wages in violation of the FLSA ("FLSA claims"); and (2) ATBI took payroll deductions from their wages in violation of Oklahoma law ("state law claims").  Such employees brought the action on their behalf

---

[1]  Based on Coefficient Table for Comparing Extra Half-time for Overtime

[2]  "A WH-58 is a standard form used by the DOL to inform an employee that, although he has the right to file suit under [§ 216(b)], acceptance of the back wages offered will result in waiver of those rights."  *Inland v. Delta Recycling Corp.*, 377 F.3d 1244, 1248 (11th Cir. 2004).

[3]  ATBI also appears to have raised managers' salaries, although neither party has clearly set forth when and in what amounts salaries were raised.

and "on behalf of all ATBI present and formerly similarly situated employees pursuant to 29 U.S.C.

§ 216(b) as a collective or class action seeking to recover unpaid minimum wages, regular wages,

overtime compensation, liquidated damages, [and] attorneys' fees and costs under the [FLSA]."

(First Am. Compl. 1.)

      On November 24, 2009, the Court (1) converted ATBI's motion to dismiss based on the

defense of waiver into one for summary judgment, and (2) granted Plaintiffs' motion for first-stage

class certification of the FLSA claims pursuant to 29 U.S.C. § 216(b) and *Thiessen v. General*

*Electric Capital Corporation*, 267 F.3d 1095, 1102 (10th Cir. 2001) (approving use of two-stage

certification process for FLSA cases).  In granting the motion for first-stage class certification over

ATBI's objection, the Court reasoned:

> ATBI argues that the mere presence of Plaintiffs' state law claims precludes
> certification of the FLSA claims.  ATBI contends that: (1) the state law claims may
> only proceed as a class action under Federal Rule of Civil Procedure 23; and (2)
> FLSA collective actions and Rule 23 state law class actions are incompatible and
> cannot be brought together in one lawsuit.  As to the first aspect of this argument,
> ATBI is correct.  If and when Plaintiffs move the Court to certify the state law claims
> as a class action, they must do so pursuant to Rule 23.  However, at this stage of the
> proceedings, Plaintiffs have not so moved.  Nor is there any indication in the First
> Amended Complaint that Plaintiffs seek to certify the state law claims as a Rule 23
> class action.  Thus, it would be entirely speculative to assume that Plaintiffs will seek
> to certify the state law claims as a class action.

(11/24/09 Order 8-9 (explaining split in case law as to whether there can exist simultaneous

certification of a § 216(b) "opt-in" class and a traditional Rule 23 "opt-out" class but concluding that

"[there [was] no need . . . to weigh in on this debate because Plaintiffs have not moved to certify the

state law claims as a Rule 23 class action").)

      As of the date of this Opinion and Order, fourteen original Plaintiffs continue to pursue their

FLSA and state law claims: Jamie Ashton ("Ashton"); Megan Balakas ("Balakas"); Rebecca

Cantrell ("Cantrell"); Alyssa Carmody ("Carmody"); Dustin Chancellor ("Chancellor"); Heather

Colvin ("Colvin"); Jessica Ingram ("Ingram"); Michelle Kaiser ("Kaiser"); Mike Jones ("Jones"); Jody McCullough ("McCullough"); Stephanie Richardson ("Richardson"); Charlotte Shipley ("Shipley"); Kathy Still ("Still"); and Eric Thompson ("Thompson") (collectively "original Plaintiffs"). In addition, twelve opt-in Plaintiffs continue to pursue their claims: Jamie Fritz ("Fritz"); Melissa Mullen ("Mullen"); Alyssa Howard ("Howard"); Kimberly Scene ("Scene"); Tiffany Rauch ("Rauch"); Katherine Olson ("Olson"), Breanna  Madden ("Madden"); Jennifer Bayack ("Bayack"); Trish Morgan ("Morgan"); Kelli Phillips ("Phillips"), Jared Vaughn ("Vaughn"); and Breanna Briscoe ("Brisoce") (collectively "opt-in Plaintiffs"). Unless necessary for clarification, the original Plaintiffs and opt-in Plaintiffs are collectively referred to as Plaintiffs. Plaintiffs are former or current ATBI Store Managers or Assistant Store Managers.[4]

In accordance with the Court's deadlines, ATBI moved the Court to decertify the FLSA collective action on grounds that the original Plaintiffs and opt-in Plaintiffs are not similarly situated ("Motion to Decertify"). In addition, the parties filed cross motions for partial summary adjudication on three issues: (1) waiver pursuant to 29 U.S.C. § 216(c) ("§ 216(c) waiver"); (2) application of the administrative and executive exemptions set forth at 29 U.S.C. § 213(a)(1) ("§ 213(a)(1) exemptions"); and (3) application of the fluctuating workweek method of overtime compensation set forth at 29 C.F.R. § 778.114 ("FWW method"). ATBI also moved for summary adjudication to limit certain Plaintiffs' damages to amounts set forth in the DOL Summary ("Motion to Limit Damages").[5]

_____

[4] Some Plaintiffs were also salespersons, but they only seek unpaid overtime for periods during which they were employed as Store Managers or Assistant Store Managers.

[5] ATBI also filed a motion in limine related to the Motion to Limit Damages – namely, a Motion in Limine to Prohibit Plaintiffs from Testifying Regarding Damages, which is also addressed in this Opinion and Order. Other motions in limine and Plaintiffs' *Daubert* motion to

## II.     ATBI's Motion to Decertify

ATBI has moved to decertify the collective action originally certified by the Court on November 24, 2009.

### A.     Legal Standard

The FLSA provides:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  The Tenth Circuit described § 216(b) as an "opt-in class action mechanism" and explained that § 216(b) "provide[s] for a class action where the complaining employees are similarly situated." *Thiessen*, 267 F.3d at 1102.[6] Section 216(b) collective actions are distinct from class actions certified pursuant to Rule 23, although "[m]any courts and commentators [] have used the vernacular of the Rule 23 class action for simplification and ease of understanding when discussing representative cases brought pursuant to § 16(b) of the FLSA." *Thiessen*, 267 F.3d at 1102 (internal quotation marks omitted).[7]

---

exclude the testimony of ATBI's damages expert Kimberly Beaucourt ("Beaucourt") will be addressed at a later time.

[6] *Thiessen* involved a collective action under the Age Discrimination in Employment Act ("ADEA").  However, because the ADEA adopts the class-action mechanism set forth in § 216(b) of the FLSA, the approach adopted in *Thiessen* decision also applies to collective actions under § 216(b).  *See, e.g., Gambrell v. Weber Carpet, Inc.*, No. 10-2131, 2010 WL 4226153, at * 1 (D. Kan. Oct. 21, 2010) (applying *Thiessen*'s two-stage approach in FLSA collective action); *Bazemore v. Bd. of Cty. Comm'rs of Grady Cty.*, No. 10-420, 2010 WL 3824178, at * 2 (W.D. Okla. Sept. 27, 2010) (same).

[7] "In a Rule 23 class action, each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless

6

"District courts have discretion to determine whether certification of a § 216(b) collective action is appropriate." *Reed v. Cty. of Orange*, 266 F.R.D. 446, 449 (C.D. Cal. 2010). The "overriding question" in certifying a collective action under § 216(b) is whether the original plaintiffs and the opt-in plaintiffs are "similarly situated." *Thiessen*, 267 F.3d at 1102. Although there are varying approaches to this question, the Tenth Circuit has expressly authorized and endorsed an ad hoc approach consisting of two stages. *See id.* at 1105.[8] In the first stage, "a court typically makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Id.* at 1102. During this first stage, plaintiffs face the relatively light burden of making "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (internal quotation marks omitted). If a court determines that a collective action should be certified for notice purposes, putative class members "are given notice and the opportunity to opt-in," and "the action proceeds as a representative action throughout discovery." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled in part on other grounds*.

During the second stage, which occurs at the conclusion of discovery, a defendant typically files a motion to "decertify" the collective action. *Thiessen*, 267 F.3d at 1102-03. Upon ruling on the motion to decertify, "the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'" *Id.* at 1103. If the claimants are indeed similarly situated, "the district court allows the representative action to proceed to trial.'" *Mooney,* 54 F.3d at 1214. "If the claimants

_____

he has opted out." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) (cited with approval in *Thiessen*). "By contrast, a putative plaintiff must affirmatively opt into a § 216(b) action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action." *Id.*

[8] The Tenth Circuit stated that, of the three approaches adopted by various courts, "[a]rguably, the ad hoc approach is the best of the three approaches outlined because it is not tied to the Rule 23 standards." *Id.*

are not similarly situated, the district court decertifies the class, []the opt-in plaintiffs are dismissed without prejudice," and "[t]he class representatives - *i.e.* the original plaintiffs - proceed to trial on their individual claims." *Id.*

This case has reached the second stage, and ATBI has filed a motion to decertify. As explained above, the overrriding question is whether original Plaintiffs and opt-in Plaintiffs are "similarly situated." Plaintiffs bear the burden of proving that the individual class members are similarly situated. *Procter v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008); *Reed*, 266 F.R.D. at 449 ("[T]he prevailing view is that plaintiffs bear the burden of proving that collective action treatment is appropriate."). The similarly situated inquiry at the second stage is "much more stringent." *Procter*, 250 F.R.D. at 280. However, as with Rule 23 class certifications, the actual merits of the plaintiffs' claims may not be considered at the decertification stage. *Burch v. Qwest Comms. Int'l*, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009); *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1150 (D. Minn. 2005).

In order to determine whether Plaintiffs have satisfied their burden of proof at this second stage, "a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Thiessen*, 267 F.3d at 1103 (internal quotations omitted).[9] As part of the similarly situated analysis, a court must also consider whether there exists a common policy, plan, or decision that negatively impacted both the original plaintiffs and the opt-in plaintiffs. *See Burch,* 677 F. Supp. 2d at 1114; *Meilke v. Laidlaw*

---

[9] *Thiessen* includes a fourth factor – namely, whether plaintiffs made the filings required by the ADEA before instituting suit, which is not applicable to FLSA cases. *See id.*; *see also Procter*, 250 F.R.D. at 280 (omitting fourth factor); *Reed*, 266 F.R.D. at 449 (same).

*Transit, Inc.*, 313 F. Supp. 2d 759, 763 (N.D. Ill. 2004).  Although a common policy or plan is not essential to certification of a collective action, the absence of a common policy can result in "enormous manageability problems."  *Proctor*, 250 F.R.D. at 281.  Therefore, a collective action should only proceed in the absence of a common policy "when it will promote judicial economy." *Mielke*, 313 F. Supp. 2d at 763.[10]

B.   Undisputed Facts Relevant to Similarly Situated Inquiry

1.   Proposed Collective Action

At this stage of the proceedings, Plaintiffs seek to certify a collective action consisting of the twenty-six individuals identified above (twelve original Plaintiffs, fourteen opt-in Plaintiffs), all of whom are former or current ATBI managers who allegedly did not receive overtime pay because they were misclassified by ATBI as exempt from FLSA's overtime requirements.  Cumulatively, the time period of Plaintiffs' claims spans 2005-2009; thus, it includes claims accruing both before and after the 2008 DOL Investigation.

2.   General Characteristics of Original Plaintiffs

a.   Dates and Bases of Claims

Original Plaintiffs all seek unpaid wages for periods of time accruing prior to October 2, 2008, the date the lawsuit was filed.  No original Plaintiff worked for ATBI after this action was filed.  Original Plaintiffs contend that ATBI misclassified them as exempt employees based upon two alternative legal theories: (1) they were not paid enough to qualify for exempt status under the § 213(a)(1) exemptions ("salary level theory"); and/or (2) no Plaintiffs were actually paid on a

---

[10]  Some courts have analyzed the existence of a common policy or plan as a separate inquiry, *see*, *e.g.*, *Burch*, 677 F. Supp. 2d at 1114-15, while other courts have analyzed the common policy or plan under the first factor, *see, e.g., Reed*, 266 F.R.D. at 450.  This Court will analyze the existence of a common policy in conjunction with the first factor.

"salary basis," as that term is used in relevant regulations explaining the § 213(a)(1) exemptions, because Plaintiffs were subject to certain payroll deductions ("salary basis theory").[11]   Original Plaintiffs are also asserting state law claims related to payroll deductions.   However, original Plaintiffs do not seek to certify the state law claims as a Rule 23 class action that would proceed simultaneously to the FLSA collective action.   Instead, the state law claims would proceed as individual claims asserted by each original Plaintiff.

b.    <u>Facts Related to § 216(c) Waiver Defense</u>

Three original Plaintiffs – Kaiser, McCullough, and Still – did not cash their checks, did not execute Form WH-58s, and returned their checks to ATBI.   One original Plaintiff, Colvin, cashed her check but did not execute a Form WH-58.   The ten other original Plaintiffs did not cash their checks or execute Form WH-58s but did allegedly "retain" the checks rather than returning them to ATBI.   ATBI does not assert a waiver defense to the claims of Kaiser, McCullogh, or Still but does assert a waiver defense as to claims of all other original Plaintiffs.

3.    <u>General Characteristics of Opt-in Plaintiffs</u>

a.    <u>Dates and Bases of Claims</u>

Four opt-in Plaintiffs – Bayack, Howard, Mullen, and Olson – only pursue claims accruing after July 7, 2008 because they concede that they waived any prior claims by cashing their checks and executing Form WH-58s.   However, these opt-in Plaintiffs worked at ATBI at points in time following July 7, 2008, and they contend that ATBI continued to violate the FLSA even following

---

[11]  *See infra* Part III.C for further explanation of Plaintiffs' salary basis and salary level theories of non-exempt status.

10

the 2008 DOL Investigation.  All opt-in Plaintiffs at least advance the salary basis theory of misclassification, and some opt-in Plaintiffs advance both theories of misclassification.[12]

           b.     <u>Facts Related to Waiver Defense</u>

As explained, opt-in Plaintiffs Bayack, Howard, Mullen, and Olson concede that they waived any claims accruing prior to July 7, 2008 but dispute that they waived any future claims. Like the majority of original Plaintiffs, the remaining opt-in Plaintiffs did not cash their checks or execute Form WH-58s but did allegedly "retain" the checks rather than returning them to ATBI.

    C.    <u>Analysis</u>

The Court concludes that all four *Thiessen* factors weigh in favor of certification of a collective action.

           1.     <u>Employment Settings</u>

Original Plaintiffs and opt-in Plaintiffs are all ATBI Store Managers or Assistant Store Managers that were allegedly misclassified as "exempt" from FLSA overtime requirements. Plaintiffs have presented evidence of a policy – namely, the Handbook Policy – in place at all relevant times that classified all Plaintiffs as "exempt."[13] Original Plaintiffs and opt-in Plaintiffs are similarly situated because they assert they were misclassified as "exempt" by such policy.  As to a large number of original Plaintiffs and opt-in Plaintiffs, their claims are based on overlapping legal

---

[12] For purposes of partial summary adjudication, Plaintiffs argued that "[t]hough ATBI subsequently raised the minimum salary for store managers after this action was filed it continued to impose deductions from the salary paychecks of the opt in Plaintiffs which prevented them from being considered paid on a salary basis."  (Doc. 83 at 15.)  Thus, at least for purposes of summary adjudication, Plaintiffs do not assert a salary level theory with respect to certain opt-in Plaintiffs.

[13] In response to Plaintiff's First Amended Motion for Summary Judgment, ATBI did not dispute Plaintiffs' asserted Fact 2, which is that all Plaintiffs were subject to the Handbook Policy.

theories as to why this classification was not permitted under the FLSA – the salary level theory and salary basis theory. The only meaningful difference between original Plaintiffs and some opt-in Plaintiffs' claims appears to be the absence of the salary level theory of misclassification.[14] However, Plaintiffs contend and have made a sufficient showing that ATBI's exempt classification of its managers remained constant for all Plaintiffs. Therefore, all original Plaintiffs and opt-in Plaintiffs were allegedly subject to the common policy of classifying managers as exempt employees, which contributes to a finding of factual similarity among proposed class members. *See Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at * 8 (S.D. Tex. Feb. 22, 2010) ("The existence of a common policy, plan, or practice that affects all class members helps to show a similar factual setting.").[15]

In addition, there are no significant factual disparities in the original Plaintiffs' and opt-in Plaintiffs' employment settings. Certain opt-in Plaintiffs whose claims accrued after the 2008 DOL Investigation were required to clock in and clock out, unlike original Plaintiffs. However, this fact is of little significance in this case because the alleged wrongful decision was to *classify* all Plaintiffs as exempt, and liability turns on the legality of this overarching management decision rather than

---

[14] This Order does intend to limit any Plaintiffs' proof at trial. If these opt-in Plaintiffs do assert a salary level theory of misclassification, this renders them even more similarly situated to original Plaintiffs.

[15] The Court acknowledges that Paragraph 7 of the First Amended Complaint and the Court's first-stage certification Order mentions only the salary level theory. *See* First Am. Compl. ¶ 7; 11/24/09 Order 7 (conditionally certifying a collective action of individuals subject to the "decision not to pay . . . overtime for hours worked in excess of forty hours per week, despite that putative class members made salaries that were too low to exempt them from overtime requirements"). However, regardless of whether, following discovery, any particular Plaintiff asserts both alternative theories or just one theory of misclassification, there remains but one alleged "decision" at issue – namely, the decision to classify these twenty-six managers as exempt.

any individualized policies related to clocking in and clocking out. *Cf. Proctor*, 250 F.R.D. at 282 (plaintiffs alleged that defendant required employees to clock out after completing forty hours of work but then continue working for 1-3 additional hours, in violation of the FLSA) (decertifying collective action because, *inter alia*, there was no evidence of a common policy that was causing plaintiffs to work off the clock, many plaintiffs admitted they never worked off the clock, there existed a company policy prohibiting working off the clock, and off the clock practices varied widely among the 300 convenience stores at issue); *Reed*, 266 F.R.D. at 458 (plaintiffs alleged that defendant had unofficial policy of discouraging deputies from reporting off the clock work and failing to pay overtime for various activities, such as "donning and doffing uniforms, pre-shift and post-shift activities, missed meal breaks, and work taken home") (decertifying collective action with respect to all activities except donning and doffing uniforms because disparities in deputies' specific job assignments, duties, and responsibilities "result[ed] in highly individualized questions of fact" as to how much time was spent on such activities). Here, ATBI has failed to show or explain how its application of a clock in/clock out policy to some but not all Plaintiffs renders these Plaintiffs not similarly situated.

ATBI also argues that there is a "disparity in claims" between original Plaintiffs and opt-in Plaintiffs because opt-in Plaintiffs answered "not applicable" to certain interrogatories. Specifically, opt-in Plaintiffs answered "not applicable" to the following: "Please list the total amount of moneys you allege you are owed to you due to improper payroll deductions by [ATBI] and how you calculated such amount." (*See* Ex. 2 to Mot. to Decertify.) The Court finds these answers entirely consistent with the Court's Order granting certification, which made clear that any opt-in procedure applied only to original Plaintiffs' FLSA claims and not the state law claims for improper payroll deductions. Apparently, ATBI asserts that these answers indicate that opt-in Plaintiffs do not assert

the salary basis theory of misclassification under the FLSA, which is tied to improper payroll deductions. The Court is not persuaded by ATBI's argument and construes these interrogatory answers as simply informing ATBI that no opt-in Plaintiffs seek recovery for improper payroll deductions under Oklahoma common law. Nothing about these interrogatory answers indicates that opt-in Plaintiffs do not seek damages for unpaid overtime under the FLSA. Thus, there is no disparity in claims with respect to the proposed FLSA collective action.

ATBI further contends that, because all original Plaintiffs' claims end in 2008 and some opt-in Plaintiffs were not even hired until 2009, they are not similarly situated. ATBI fails to explain, however, why this difference renders the opt-in Plaintiffs, who were allegedly classified as exempt in 2009, any different than those classified as exempt from 2005-2008. A significant event occurred in 2008 – namely, the 2008 DOL Investigation. Plaintiffs may have better evidence of misclassification for periods before and during 2008 – namely, Stuart's testimony that ATBI did not understand FLSA's requirements prior to that time. Nonetheless, Plaintiffs contend that ATBI continued, even after the 2008 DOL Investigation, to misclassify managers as exempt and fail to pay them overtime. Any factual disparities in dates of employment are insignificant in resolving the issues presented.

ATBI's final alleged factual disparity relates to one opt-in Plaintiff, Vaughn, being classified by ATBI as an hourly employee rather than a salaried employee. If accurate, this would be a significant factual difference in this case because the Handbook Policy only applies to "salaried" employees. However, Plaintiffs have made clear that Vaughn is only seeking recovery for unpaid wages accrued through December 2007, or when he was employed as a "salaried" manager.

2.      Defenses

The second factor inquires as to whether there exist "defenses that need to be litigated on an individual basis." *Reed*, 266 F.R.D. at 460.  ATBI has failed to identify any disparate defenses that warrant decertification.  ATBI argues that differences in the periods of employment are relevant to its defenses and warrant decertification.  (*See* Mot. to Decertify 8 ("[ATBI] could argue as defenses that Plaintiff Kaiser was an exempt employee during the months of October 2006 through December 2006 . . . while Plaintiff Jones was an exempt employee during October 2007 through May 2008.").  The Court does not fully understand ATBI's argument because Kaiser and Jones are both original Plaintiffs, and there is no need to analyze the similarity of their claims as part of a decertification analysis.  In any event, any factual differences between original Plaintiffs' and opt-in Plaintiffs' dates of employment can be handled by a Court or jury, once certain relevant legal questions are answered on a class-wide basis or a jury is instructed on a class-wide basis.  ATBI also argues that its § 216(c) waiver defense is so individualized as to warrant decertification.  However, as demonstrated below, the Court can easily divide Plaintiffs into three groups and render relevant legal rulings on the § 216(c) waiver defense, indicating that this defense also does not warrant decertification.[16]

---

[16]  ATBI has not argued that original Plaintiffs and opt-in Plaintiffs had significantly varying managerial tasks or levels of hiring/firing authority.  At least one court has held that significant differences in these two factors, which are relevant to the § 213(a)(1) exemptions, warranted decertification in a FLSA "misclassification" case.  *See Smith*, 404 F. Supp. 2d at 1152-54 (decertifying collective action consisting of 261 Jiffy Lube store managers because deposition testimony revealed that managers' tasks and hiring/firing authority varied drastically from store to store).

3.    Fairness and Procedural Considerations and Filing Requirements

In evaluating fairness and procedural considerations, a court "must consider the primary objectives of a collective action: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Reed*, 266 F.R.D. at 462. A court must also "determine whether it can coherently manage the class in a manner that will not prejudice any party." *Id.* (internal quotation omitted).

The legal and factual issues presented can be fairly and expeditiously decided in the proposed collective action. Both parties have filed cross motions for partial summary adjudication, which apply equally to original Plaintiffs and opt-in Plaintiffs. It would make little procedural sense to decertify the class and force opt-in Plaintiffs to re-file another action. Instead, this is a collective action that, in the Court's view, will efficiently resolve common issues of law and fact that arose from the same alleged activity of classifying Plaintiffs as exempt employees and failing to pay them the alleged required amount of FLSA overtime. Nor is there anything unmanageable about this collective action. There are twenty-six total Plaintiffs whose claims span a period of four years, and there are no glaring factual differences that render a collective action unfair or procedurally inefficient. *Cf. Proctor*, 250 F.R.D. at 284 (decertifying collective action because plaintiffs worked in settings that varied from store to store, manager to manager, and day to day, and it would be "fairer and procedurally more expedient to decertify the class"). Although ATBI cites varying factual circumstances regarding waiver that will require "mini trials," (*see* Doc. 86 at 9), this concern is entirely unfounded, as such issues can be resolved for all original and opt-in Plaintiffs by summary adjudication. *See infra* Part III.B.

D.    Conclusion

Plaintiffs have satisfied their burden of showing that original Plaintiffs and opt-in Plaintiffs are similarly situated ATBI managers who were allegedly misclassified as exempt from FLSA overtime requirements.  ATBI has not identified any significant factual disparities in managers' employment settings, managers' proof, or ATBI's defenses that warrant decertification.  Further, allowing these Plaintiffs to pool resources and proceed collectively furthers the interest of fairness with little resulting prejudice to ATBI.  Therefore, the Court denies ATBI's Motion to Decertify, and the case will proceed as a collective action consisting of the twenty-six Plaintiffs identified above.

## III.    Parties' Cross Motions for Partial Summary Adjudication

Both parties have filed motions for partial summary adjudication on similar issues, and the Court will rule on the motions simultaneously.  The motions essentially raise three issues: (1) § 216(c) waiver; (2) application of the § 213(a)(1) exemptions; and (3) application of the FWW method.

A.    Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id.*  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing

sufficient to establish the existence of those elements essential to that party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).  The relevant legal standard does not change where the parties file cross motions for summary judgment, and each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

B.      Section 216(c) Waiver

The FLSA provides two courses of action available to remedy an employer's failure to pay overtime compensation: (1) a private right of action, which includes recovery for any unpaid overtime compensation, an additional equal amount as liquidated damages, and attorney's fees and costs, *see* 29 U.S.C. § 216(b); and (2) a DOL-supervised "settlement" of FLSA claims, *see id.* § 216(c) (authorizing the DOL "to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee"); *see also Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007) (explaining that § 216(c) "authorizes the DOL to supervise what courts have termed the 'settlement' of FLSA claims").  Section 216(c) provides that "the *agreement* of any employee to accept [the DOL-supervised] payment [from the employer] shall upon *payment in full* constitute a waiver by such employee of any right he may have under [§ 216(b)]."  29 U.S.C. § 216(c).

In order for an employee to waive his rights pursuant to § 216(c), there must be both an "agreement to accept payment" and a "payment in full."  *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305-06 (7th Cir. 1986) (reasoning that agreement and payment are distinct

components in the statute).[17]  As explained by the Seventh Circuit, this is consistent with common

law principles of accord and satisfaction:

> When private disputes are compromised, the people memorialize their compromise in an agreement. This agreement (the accord), followed by the payment (the satisfaction), bars further litigation. Payment of money is not enough to prevent litigation. If a potential defendant in a tort suit pays $1,000 to the plaintiff, who cashes the check, this does not alone extinguish the plaintiff's right to sue. The $1,000 might be a part payment. There must also be a release.

*Id.* at 306.  Both elements would clearly be satisfied when an employee executes Form WH-58,

returns the form to the employer, and cashes the employer's check.  Litigation has arisen, however,

in other more complicated circumstances, such as: (1) when a check that is later cashed was not

accompanied by Form WH-58 (or some other similar form) upon the check's receipt, *see Walton*,

786 F.2d at 307 (employees' cashing of checks did not constitute waiver where DOL did not send

out "form agreements or ask the employees to surrender any rights"); (2) when an employee

executes Form WH-58 or some other release but then returns an uncashed check to the employer,

*see Sneed v. Sneed's Pub., Inc.*, 545 F.2d 537, 539-40 (5th Cir. 1977) (employee who signed release,

took check, but then later returned check had nonetheless waived right to sue); and (3) when an

employee cashes a check that was accompanied by a Form WH-58 but does not actually execute the

Form WH-58, *see Heavenridge v. Ace-Tex Corp.*, No. 92-75610, 1993 WL 603201, at * 2-3 (E.D.

Mich. Sept. 3, 1993) (employee who cashed check but failed to sign Form WH-58 had nonetheless

waived right to sue based on Form WH-58's language explaining that mere "acceptance" of the back

due wages constituted waiver).

---

[17] "Payment in full" does not mean the amount conceived by an employee as his maximum claim; payment in full simply means full payment of the "settlement" amount. *See id.* at 305.

In this case, no Plaintiffs executed Form WH-58s covering the claims asserted, and Plaintiffs took various actions with their checks. Plaintiffs can be grouped into three categories: (1) those who did not execute Form WH-58s and then returned their checks to ATBI; (2) those who did not execute Form WH-58s but cashed their checks; and (3) those who did not execute Form WH-58s and "retained," but did not cash, their checks.[18]

### 1.   Did Not Sign Form WH-58s and Returned Checks to ATBI

Clearly, those Plaintiffs who did not execute Form WH-58s and then subsequently returned their checks to ATBI did not waive their claims. There can be no agreement to settle their claims, under even the most liberal interpretation of the term.

### 2.   Did Not Sign Form WH-58s and Cashed Checks

Only one Plaintiff – Colvin – falls into this category. The question is whether the agreement component of § 216(c) is satisfied by virtue of (1) Form WH-58's language that "acceptance of back due wages" constitutes waiver, and (2) cashing the check. As explained by the court in *Heavenridge*, such a situation is distinguishable from that presented in *Walton* because, in *Walton*, the cashed checks were not originally accompanied by Form WH-58 or any language stating that "acceptance" of such check would constitute waiver. *Heavenridge*, 1993 WL 603201, at * 3. The *Heavenridge* court reasoned:

---

[18] For purposes of its own motion for summary adjudication, Plaintiff does not dispute that all checks were "retained," as that term is used by ATBI. For purposes of ATBI's motion for summary adjudication of this issue, Plaintiffs dispute whether any Plaintiffs actually "retained" their checks. Because the Court rules in favor of Plaintiffs on their own motion for summary adjudication, the Court need not address the meaning of "retain" or any factual issues related to retention.

Plaintiff takes the position that the receipt was actually a release, and that without his signature the settlement was not effectuated. The plain language of the receipt[19] does not support this interpretation, however, since settlement was predicated on "acceptance of back wages" not on "release of all claims." The receipt was nothing more than an acknowledgment of the payment, as is clear from the Department of Labor's approach, which was to tell Defendant to treat the canceled check as its receipt of payment. From these circumstances, it can be inferred that Plaintiff cashed the check with the understanding that cashing the check constituted a settlement agreement. As a result, Plaintiff waived his right to sue for back wages for the period [covered by the receipt].

*Id.* (footnote added). This decision is directly on point, and the Court agrees with its analysis. Therefore, Colvin has waived all claims for back due wages accruing prior to July 7, 2008.[20]

### 3.   Did Not Sign Form WH-58s and "Retained," But Did Not Cash, Checks

For these Plaintiffs, the issue is whether the act of "retaining" a settlement check that was accompanied by Form WH-58 is sufficient to constitute a waiver under § 216(c). Neither party has cited case law on point. The analysis turns on the meaning of the word "acceptance" used in Form WH-58, *i.e.*, does "retaining" but not cashing the checks constitute an employee's "acceptance of back wages." The Court holds that it does not. "Agreement" by virtue of a cashed check creates a bright-line rule that is readily capable of evidentiary proof. In addition, such a rule allows both parties to have notice that an agreement has actually been reached. Agreement by virtue of a "retained" check, by contrast, creates a more onerous rule, and there is no clear moment in time that an agreement is reached. If an employee tears up, trashes, or burns a check but does not return it to the employer, would this constitute a "retained" check representing an agreement to accept the back due wages and forego the right to sue? As a practical matter, the argument advanced by ATBI

---

[19]  The "receipt" in *Heavenridge* was entitled Receipt for Payment of Back Wages and appears to have been a Form WH-58, the same form sent to Plaintiffs in this case.

[20]  ATBI is not entitled to summary judgment against Colvin because she also seeks unpaid wages for subsequent pay periods.

places an unfair burden on an employee to return the check to the employer. In this Court's view, an employee who fails to sign Form WH-58 and fails to actually cash the employer's check cannot be deemed to have waived her right to sue pursuant to § 216(c).[21]

C.      Section 213(a)(1) Exemptions

The FLSA requires that an employer pay its employees one and one-half times their regular rate of pay for any time worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207(a)(2); *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1228 (10th Cir. 2008). However, the FLSA exempts from this requirement any "employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); *see Archuleta*, 543 F.3d at 1228. "While it is the employee's burden to prove that the employer is violating the FLSA, it is the defendant employer's burden to prove that an employee is exempt from FLSA coverage." *Archuleta*, 543 F.3d at 1233 (internal citation omitted). Exemptions to the FLSA must be narrowly construed, and the employer must show that the employee fits "plainly and unmistakenly" within the exemption's terms. *See id.*; *see also Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009) ("The applicability of an FLSA exemption is an affirmative defense that an employer must establish by a preponderance of the evidence."). ATBI has moved for summary adjudication that all Plaintiffs are exempt under § 213(a)(1) because they were employed in an "executive" or "administrative" capacity.[22] Plaintiffs have moved for partial summary adjudication that no Plaintiffs are exempt under § 213(a)(1).

---

[21] The result may be different in cases involving any type of document executed by the employee. *See, e.g.*, *Sneed*, 545 F.2d at 539-40.

[22] The "professional" capacity exemption is not at issue.

1.     ATBI's Motion

The federal regulations contain the following test for determining whether an employee is

employed in a bona fide *administrative* capacity:

> (a) The term "employee employed in a bona fide administrative capacity" in section
> 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary or fee[23] basis at a rate of not less than $455 per week
> . . . exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to
> the management or general business operations of the employer or the employer's customers;
> and
> (3) Whose primary duty includes the exercise of discretion and independent
> judgment with respect to matters of significance.
> (b) The term "salary basis" is defined at § 541.602; . . . and "primary duty" is defined
> at § 541.700.

29 C.F.R. § 541.200 (footnote added).  The federal regulations contain the following test for

determining whether an employee is employed in a bona fide *executive* capacity:

> a) The term "employee employed in a bona fide executive capacity" in section
> 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary basis at a rate of not less than $455 per week . . .
> exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is
> employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees;
> and
> (4) Who has the authority to hire or fire other employees or whose suggestions and
> recommendations as to the hiring, firing, advancement, promotion or any other
> change of status of other employees are given particular weight.
> (b) The phrase "salary basis" is defined at § 541.602 . . . "primary duty" is defined
> at § 541.700; and "customarily and regularly" is defined at § 541.701.

29 C.F.R. § 541.100.

Under these regulations, an employee's position must satisfy three general tests in order to

qualify for the relevant exemptions: (1) a salary level test; (2) a salary basis test; and (3) a duties test.

---

[23]  Neither party contends that Plaintiffs were compensated on a "fee basis," and this
aspect of the administrative exemption is not at issue.

*See Baden-Winterwood,* 566 F.3d at 626-27.[24]   The salary level test inquires as to whether an employee's salary exceeds the $455 per week amount set forth at 29 C.F.R. §§ 541.200(a)(1) and 541.100(a)(1).  The salary basis test inquires whether, regardless of the salary level, the employee was paid on a "salary basis," as that term is used in 29 C.F.R. §§ 541.200(a)(1) and 541.100(a)(1).

The Court begins and ends its analysis of ATBI's motion with the salary basis test.  Under this component of the regulations, ATBI bears the burden of proving that Plaintiffs were paid: (1) a predetermined amount, which (2) was not subject to reduction (3) based on quality or quantity of work performed.  *See Baden-Winterwood*, 566 F.3d at 627.  Here, there is no dispute that all Plaintiffs were paid a predetermined amount of salary.  The question is whether ATBI has adequately demonstrated that such amounts were "not subject to reductions" based on the quantity or quality of work performed.  The relevant regulations provide substantial guidance in making the "subject to reductions" determination:

> a) An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer *did not intend to pay* employees on a salary basis. *An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.*  The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: *the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.*
> (b) If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions. Employees in different job classifications or who work for different managers do not lose their

---

[24]  The duties test varies between the administrative and executive exemptions, but the other two tests are the same.

status as exempt employees. Thus, for example, if a manager at a company facility routinely docks the pay of engineers at that facility for partial-day personal absences, then all engineers at that facility whose pay could have been improperly docked by the manager would lose the exemption; engineers at other facilities or working for other managers, however, would remain exempt.

(c) Improper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions.

. . .[25]

(e) This section shall not be construed in an unduly technical manner so as to defeat the exemption.

29 C.F.R, § 541.603 (footnote added).[26]

In support of its motion for summary adjudication, ATBI presented no undisputed facts regarding the "salary basis" component of the § 213(a)(1) exemptions. ATBI's only mention of the salary basis test is contained in the argument section regarding the FWW method. Therein, ATBI argues, without citation to authority, that "Plaintiffs have the burden of demonstrating that Defendant did not intend to pay employees on a salary basis" and that "Plaintiffs have no evidence to show that any Plaintiff actually had a deduction taken out of his/her salary." (Def.'s Am. First Mot. for Partial Summ. J. 21-22.) However, the salary basis requirement is a component of the relevant exemptions, and case law indicates that ATBI bears the burden of proving that Plaintiffs' salaries were *not* subject to reduction. *See Baden-Winterwood*, 566 F.3d at 627 (noting, that under

---

[25]  Subsection (d) is a safe harbor provision that is not raised by ATBI as a basis for summary adjudication.

[26]  Based on these regulations, the Court agrees with the Sixth Circuit that the "significant likelihood" test set forth by the Supreme Court in *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that the salary-basis test denied exempt status if there was an "actual practice" of deductions *or* an employment policy that creates a "substantial likelihood" of deductions), is no longer applicable. *See Baden-Winterwood*, 566 F.3d at 627-28 (explaining that regulations effective in 2004 effectively eliminated "substantial likelihood" test and that courts must now apply "actual practices" test). Therefore, the "actual practices" test will be applied in this Order and at trial.

pre-*Auer* or post-*Auer* version of salary-basis test, the defendant "bears the burden of proving that [the plaintiffs] were paid: (1) a predetermined amount, which (2) was not subject to reduction (3) based on quality or quantity of work performed"); *Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445, 449 (W.D.N.Y. 2010) (addressing summary judgment motions related to salary-basis test and holding that "[t]he burden is on the employer to prove that the employee clearly falls within the terms of the exemption").  ATBI has not presented evidence relevant to any of the definitions or factors listed in 29 C.F.R. § 541.603, such as how many instances of payroll deductions occurred during the relevant time frame.  *Cf. Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 684 (1st Cir. 2007) (affirming grant of summary judgment for employer because "two aberrant paychecks out of the approximately 50 that Cash received do not amount to an 'actual practice'").  Simply pointing to an absence of evidence by Plaintiffs is insufficient to entitle ATBI to summary adjudication on these affirmative defenses.  Therefore, ATBI has not demonstrated that it is entitled to summary adjudication based on the § 213(a)(1) exemptions.[27]

2.    Plaintiffs' Motion

Plaintiffs have moved for summary adjudication that the § 213(a)(1) exemptions are *inapplicable* as a matter of law.  Plaintiffs contend that they are entitled to summary adjudication on such exemptions because: (1) ATBI cannot satisfy the salary basis test for any Plaintiffs; and (2) ATBI cannot satisfy the salary level test for any Plaintiff seeking unpaid overtime accruing prior to October 2008, the date Plaintiffs filed suit.

---

[27]  Because ATBI has failed to demonstrate, as a matter of law, that Plaintiffs were paid on a salary basis, the Court need not reach the salary level test or the duties test.

a.        Salary Basis Test

In support of their motion, Plaintiffs have presented the testimony of Shanda Keyes ("Keyes"), ATBI Tulsa District Sales Manager responsible for training managers.  Keyes testified that, as a general course, ATBI made two types of monetary deductions from managers' paychecks: (1) a $50.00 salary deduction for late store openings ("late opening deduction"); and (2) a $100.00 salary deduction for failing to make the nightly deposit immediately after store closing ("failure to deposit deduction").  (*See* Keyes Dep., Ex. 3 to Doc. 83, at 70 (confirming that this was not just "theoretical policy" but was actually done); *see also* Doc. 83 at Statement of Fact 16).)  As to the late opening and failure to deposit deductions, ATBI also had written policies, which employees were required to execute:

> New Open Policy - Effective June 25, 2002
> [ATBI] employees who are responsible for the opening shift must open by 7:00am. . . . If an employee is later than 7:00 am, they will be charged an opening late fee of $50.00.  This amount will be an automatic deduction from your next pay check. Please sign the form below to be placed into your employee file.
>
> June 30, 2006
> ATTN: All Sales Employees
> As of July 1, 2006 [i]f store deposits are not made each and every evening as required, you will be fined $100.00 and a write up done to be put in your employee file. . . . All sales employees are to sign this memo and fax it back to the corp. office asap.

(Ex. 6 to Doc. 83.)[28]  In response, ATBI did not present any evidence refuting Keyes' testimony that it took late opening and failure to deposit deductions from managers' paychecks.  (*See* Doc. 105 at Resp. to Statement of Fact 16 (disputing, by virtue of Stuart's testimony, that ATBI made payroll

---

[28]  Plaintiffs have also presented evidence of other written policies that could subject employees to payroll deductions, but they are not accompanied by testimony that ATBI ever made such deductions.  Therefore, such policies cannot entitle Plaintiffs to summary adjudication under the post-*Auer* version of the regulations.

deductions for missing sales meetings or training or failing to secure payment from clients, but failing to refute Keyes' testimony regarding late opening and failure to deposit deductions).)

Thus, the undisputed evidence presented by Plaintiffs demonstrates that (1) ATBI took certain payroll deductions at undefined time frames, as described by Keyes; and (2) ATBI had written policies in place, executed by employees, consistent with the practices described by Keyes. Plaintiffs have not presented evidence, however, regarding (1) the number of infractions versus the number of actual payroll deductions; (2) what employees were subject to the deductions; and (3) whether any of the twenty-six Plaintiffs were subject to the deductions.

Although it is a close question, Plaintiffs are not entitled to summary adjudication on this issue. Plaintiffs have compelling evidence of two written policies that were, according to Keyes, applied at certain relevant times during this lawsuit. The policies appear to be mandatory, leaving no room for discretion. *Cf. O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 182 (D. Mass. 2008) (applying less stringent "significant likelihood" test and holding that handbook did not create a "significant likelihood" of deductions because "it authorize[d] managers to use considerable discretion with respect to" taking deductions). Further, Keyes' testimony as to these two policies is unrefuted. However, the regulations instruct that, in order for a policy to amount to an "actual practice," a court or fact-finder is to consider "the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions." 29 C.F.R. § 541.603. Plaintiffs have not presented evidence regarding the actual number of improper deductions, the number of infractions warranting

discipline, or the time period of the deductions, all of which could contribute to a determination of whether the written policies in this record resulted in any "actual practices" of payroll deductions. Nor have Plaintiffs provided any specific examples, pointing to payroll records, of such a deduction occurring.  Therefore, considering all relevant factors set forth in the regulation, Plaintiffs have not presented sufficient evidence to entitle them to summary adjudication on this issue.  *Cf. Scholtisek*, 697 F. Supp. 2d at 452-53 (granting summary adjudication in favor of plaintiffs where defendant's payroll supervisor testified as to employer's actual practice of docking pay for partial day absences, in combination with testimony regarding specific payroll records showing that, "during one particular week, [a particular employee] had missed half a day, and that instead of being paid his usual salary of $550 for that week, [he] received ninety percent of that amount").[29]

> b.   <u>Salary Level Test</u>

For purposes of summary adjudication, Plaintiffs argue that for any Plaintiffs whose claims all accrued prior to October 2008, ATBI cannot establish the salary level test and that such Plaintiffs

---

[29]  As explained above, Plaintiffs failed to show that any of the twenty-six Plaintiffs in this case, or any other specific employee employed during the relevant time frame, incurred deductions from their paychecks.  The Court reserves ruling on whether this is a requirement, or whether it is sufficient for Plaintiffs to show that ATBI had an actual practice of docking pay during the relevant time period.  *Compare Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 371 (7th Cir. 2005) ("The plaintiffs' wages have never been decreased under this policy, but both the old and new regulations state that being "subject to" a reduction in pay is sufficient to prevent an employee from being considered "salaried.") *with Monroe Firefighters Ass'n v. City of Monroe*, 600 F. Supp. 2d 790, 798-99 (W.D. La. 2009) (granting summary adjudication that firefighters were paid on a salary basis) ("[T]o the extent that the post-August 23, 2004 regulations require an actual disciplinary deduction and to the extent that these regulations are controlling, there is no evidence that any District or Deputy Chief ever suffered a twelve-hour deduction from pay for missing out.").

are therefore entitled to summary adjudication as to misclassification. Section 213(a)(1) exemptions require an employee to be compensated on a "salary basis at a rate not less than $455 per week" or an equivalent amount for a longer pay period. *See* 29 C.F.R. §§ 541.100, 541.200. As explained by the regulations:

> The $455 a week may be translated into equivalent amounts for periods longer than one week. The requirement will be met if the employee is compensated biweekly on a salary basis of $910, semimonthly on a salary basis of $985.83, or monthly on a salary basis of $1,971.66. However, the shortest period of payment that will meet this compensation requirement is one week.

29 C.F.R. § 541.600(b). For pay periods prior to October 2008, there is no dispute that ATBI paid Plaintiffs a set salary of less than $1971.66 per month. ATBI argues, however, that bonuses and commissions must be added to the amount of set salary when determining whether an employee's salary reaches the required $455 per week. As evidence of satisfaction of the salary basis test, ATBI set forth twenty-six statements of fact relating to each Plaintiff:

> Based upon [his or her] discovery responses, [Plaintiff] was employed . . . and [his or her] monthly salary, including bonuses and commissions, during her entire employment with [ATBI] met or exceeded the $455 per week (or $1971.67 per month) require for exempt employees under Section 213 of the FLSA. [citation to that Plaintiff's interrogatory responses and Beaucourt report or Beaucourt supplemental report]. On an annualized basis, [Plaintiff] was paid [a claimed %] over the FLSA minimum. [citation to Beaucourt report or Beaucourt supplemental report.]

(*See* Doc. 104 at ¶¶ 4-29.) Plaintiffs argue that the calculation of "salary," as that term is used in the § 213(a)(1) exemptions, does not include bonuses and commissions.[30]

There is no question that commissions and non-discretionary bonuses must be included when deriving a "regular rate" for purposes of calculating the amount of overtime due, in the event that

---

[30] Similar arguments are raised by Plaintiffs in their *Daubert* motion to exclude Beaucourt's expert reports.

FLSA liability is established.  *See* 29 U.S.C. § 207(a)(2) (disallowing hours worked in excess of forty per week unless such employee receives overtime compensation "at a rate not less than one and one-half times the *regular rate* at which he is employed") (emphasis added); 29 U.S.C. § 207(e) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include [eight statutory exclusions]."); 29 C.F.R. § 778.117 (explaining that commissions are "payments for hours worked and must be included in the regular rate"); 29 C.F.R. § 778.211(b) (explaining that non-discretionary bonuses are included in the regular rate).[31]  Both parties included amounts for commissions and non-discretionary bonuses in calculating the "regular rate" for purposes of their damages calculations.  (*See*, *e.g.*, Beaucourt Report, Ex. 2 to Doc. 104 (using, as components of overtime calculation, salary compensation, bonus, and commissions); Dustin Chancellor Back Wage Calculation, contained within Dustin Chancellor's Resp. to Interrog., Ex. 4 to Doc. 104 (using, as component of overtime calculation, "[r]egular rate for pay period including salary, non-discretionary bonuses and commission").)  The question is whether these same rules apply when determining whether salaried employees' compensation reaches the minimum amount required for the § 213(a)(1) exemptions.  Neither party cited relevant case law supporting their respective positions.

The Court concludes that, in calculating the amount paid to an employee on a "salary basis" as used in the administrative and executive exemptions, a court may only include "predetermined" amounts of pay.  *See* 29 C.F.R. § 541.602 (explaining that employee will be considered to be paid on a salary basis if he regularly receives, on a weekly or less frequent basis, "a *predetermined*

---

[31]  Plaintiffs do not dispute that any bonuses received by Plaintiffs were non-discretionary within the meaning of 29 C.F.R. § 778.211.

amount constituting all *or part* of the employee's compensation") (emphasis added).  The regulation states that an employee's *salary* is the predetermined amount, while contemplating that such salary may only be *part* of the total compensation received, after an employee receives commissions or other compensation.[32]  The Court agrees with Plaintiffs that the concept of salary, for purposes of the minimum weekly amount set forth in the § 213(a)(1) exemptions, presupposes a "guaranteed minimum" that does not ordinarily include additional compensation for commissions or bonuses in amounts decided only after they are earned by the employee for a particular pay period.  *See Coppage v. Bradshaw*, 665 F. Supp. 2d 1361, 1366 (N.D. Ga. 2009) (describing commissions as something above a "guaranteed minimum" base salary and concluding that the employee was compensated on a salary basis at a predetermined rate that did not include commissions);[33] 29 C.F.R. § 541.604(a) (entitled "Minimum guarantee plus extras") (explaining that exempt employee who is guaranteed at least $455 each week paid on a salary basis does not lose exempt status simply because he receives additional compensation in the form of commissions); 29 C.F.R. § 541.601(b)(1) (entitled "Highly compensated employees") (in calculating whether employee reaches $100,000 in "total annual compensation," the amount must include "at least $455 per week paid on a salary or fee basis" and "may also include commissions, non-discretionary bonuses and other non-

---

[32]  Although this regulation goes to the question of whether an employee is compensated on a salary *basis*, as opposed to at the requisite salary *level*, the Court finds it instructive as to what amounts are included in the "salary."

[33]  In *Coppage*, the employee's guaranteed minimum salary exceeded $455 per week. However, the employee argued that he was not exempt because his employer took performance-based deductions from amounts he received above his guaranteed minimum salary.  *See id.*  The court held that "where an exempt employee receives additional compensation above his guaranteed minimum salary, an employer may make deductions without destroying the salary basis."  *See id.* While not directly on point, *Coppage* is instructive because it indicates that salary only consists of predetermined amounts and does not include commissions.

discretionary compensation earned during a 52-week period").  These related regulations, although not directly on point as to the issue presented, certainly indicate that commissions and bonuses are not included in determining whether a "predetermined" salary reaches the $455 per week.  If commissions were automatically included in the $455 per week calculation, there would be no need to clarify that commissions received in excess of $455 do not nullify the exemption.  *See* 29 C.F.R. § 541.604(a).

Without the inclusion of bonuses and commissions, there is no dispute that certain Plaintiffs – namely, those whose claims all accrued before October 2008 – were paid salaries less than $455 per week.  Therefore, such Plaintiffs have established that ATBI cannot satisfy the salary level requirement of the § 213(a)(1) exemptions and that they are entitled to summary adjudication as to this affirmative defense.

D.    FWW Method

Both parties have filed motions for summary adjudication as to the application of 29 C.F.R. § 778.114, which explains the "'fluctuating workweek' method of overtime payment."  29 C.F.R. § 778.114(c).  The regulation provides:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.  Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to

week and is determined by dividing the number of hours worked in the workweek
into the amount of the salary to obtain the applicable hours at one-half such rate in
addition to the salary satisfies the overtime pay requirement because such hours have
already been compensated at the straight time regular rate, under the salary
arrangement.

*Id.* § 778.114(a).

       1.    ATBI's Motion

ATBI has moved for summary adjudication that Plaintiffs were "exempt" employees because

they were properly paid under the FWW method.  (*See* Doc. 104 at 18; *see also id.* at 23 ("[ATBI]

is entitled to partial summary judgment, finding that Plaintiffs were exempt under the fluctuating

work week method of payment.").)  As an initial matter, the Court finds that ATBI's use of the word

"exempt" is misplaced because 29 C.F.R. § 778.114 does not function as an "exemption" from

overtime requirements.  If applicable, it simply allows a different "method of overtime payment"

– namely, at a rate of one-half the employee's regular rate of pay rather than one and one-half times

the employee's regular rate of pay.  *See id.* § 778.114(a), (b); *see also Clements v. Serco, Inc.*, 530

F.3d 1224, 1230 (10th Cir. 2008) ("The FLSA requires eligible employees to be compensated at one

and one-half their hourly wages for overtime hours worked.  Where, however, certain conditions are

met, the rate is reduced to 'half time.'  This is referred to as the 'fluctuating workweek' method."

(internal citation omitted) (citing 29 C.F.R. § 778.114).[34]  Therefore, ATBI's motion is properly

---

    [34] The First Circuit has offered an explanation for the rationale behind the FWW method:

When the fluctuating workweek method applies, the employee's "regular rate" for
FLSA purposes is calculated anew each week by dividing the actual number of
hours worked that week into the fixed salary amount. This calculation produces a
straight-time hourly rate, which is then multiplied by 50% to produce the
overtime rate that must be paid for every hour worked beyond 40 that week.  The
interpretative regulations explain why the overtime rate is only half-time, rather
than the usual time-and-a-half: "Payment for overtime hours at one-half [the
regular] rate in addition to the salary satisfies the overtime pay requirement

understood as a motion for summary adjudication that (1) 29 C.F.R. § 778.114 applies; and (2) all

Plaintiffs received the amount of "half time" overtime they were due pursuant to the FWW method.

"For obvious reasons, an employer may not simply elect to pay the lower overtime rate under

§ 778.114." *O'Brien*, 350 F.3d at 288. Instead, the following four conditions must be satisfied

before an employer may pay overtime pursuant to the FWW method: "(1) the employee's hours must

fluctuate from week to week; (2) the employee must receive a fixed salary that does not vary with

the number of hours worked during the week (excluding overtime premiums); (3) the fixed amount

must be sufficient to provide compensation every week at a regular rate that is at least equal to the

minimum wage; and (4) the employer and employee must share a 'clear mutual understanding' that

the employer will pay that fixed salary regardless of the number of hours worked." *Id.*; *Robinson*

*v. Evergreen Presbyterian Ministries, Inc.*, No. 0601184, 2008 WL 508083, at * 4 (W.D. Okla. Feb.

22, 2008) (same). There is also, relevant to this case, a fifth requirement that the employee "be

employed on a salary basis." 29 C.F.R. § 776.114(a).

ATBI has not established the fourth element as a matter of law and is therefore not entitled

to summary adjudication on this issue. As to the fourth element, the regulation explains that there

must be "a clear mutual understanding of the parties that the fixed salary is compensation (apart

---

because such hours have already been compensated at the straight time regular
rate, under the salary arrangement." § 778.114(a). In other words, the fixed sum
represents the employee's entire straight-time pay for the week, no matter how
many hours the employee worked; the employer need only pay the 50% overtime
premium required by the FLSA for hours after 40.

*O'Brien v. Town of Agawam*, 350 F.3d 279, 287-88 (1st Cir. 2003).

from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working forty hours or some other fixed weekly work period." *Id.* § 778.114(a).  The Tenth Circuit has clarified that the proper inquiry is whether the employer and employee "had a clear and mutual understanding that they would be paid on a salary basis for all hours worked, even those in excess of forty hours per week." *Clements*, 530 F.3d at 1230; *see also Robinson*, 2008 WL 508083, at * 4 (denying defendant's motion for summary judgment because plaintiffs had created genuine issue of fact by presenting evidence "that they understood that their salary compensated them for working forty hours per week and that any overtime would be paid at the rate of a specific set amount").  As evidence in support of the fourth element, ATBI submitted the following testimony from Plaintiff Kaiser:

> Q:      Other than [Keyes], did anyone else [at ATBI] tell you must stay and work overtime?
> A:      No, I think it was just a given. . . . If our employees don't come to our store we either have to cover the shift, if we don't cover the shift we cover it.  I mean, that was just a general thing with management.  I mean, I was told from the git-go, you are to manage your store.

(Kaiser Dep., Ex. 20 to First Am. Mot. for Partial Summ. J., at 18-19.)  ATBI has also submitted managers' job descriptions, which provide that (1) Assistant Store Managers must work a minimum 40 hours a week and are "required to have open availability," (*see* Ex. 16 to Doc. 104), and (2) Managers must work a minimum of 40 hours per week, with "[f]lexibility to increase during peak season" (*see* Ex. 17 to Doc. 104).

ATBI's evidence is insufficient to demonstrate any clear, mutual understanding as to whether Plaintiffs' salaries were intended as compensation for hours worked in excess of forty hours per week.  The evidence simply establishes that Plaintiffs were expected to work in excess of forty hours per week when needed.  Further, as explained in detail below, Plaintiffs have presented unrefuted

testimony from Stuart that there was no such understanding between ATBI and Plaintiffs. Accordingly, ATBI is not entitled to summary adjudication as to the applicability of the FWW method.

### 2. Plaintiffs' Motion

Plaintiffs have also moved for summary adjudication on this issue, arguing that the FWW method is *inapplicable* as a matter of law because ATBI cannot establish: (1) that Plaintiffs were paid on a salary basis or (2) that the parties had a clear understanding that their salary covered hours worked in excess of forty per week.

For reasons explained *supra* Part III.C.2.a., Plaintiffs are not entitled to summary adjudication that, due to improper payroll deductions, they were not paid on a "salary basis." Therefore, Plaintiffs also are not entitled to summary adjudication that, because they were not paid salary basis, they did not qualify for the FWW method. The remaining question is whether Plaintiffs have demonstrated, as a matter of law, that ATBI and Plaintiffs did not have the mutual understanding required for application of the FWW method.

In support of their motion, Plaintiffs have presented the testimony of Stuart. Stuart agreed with the statement "that there was no agreement between [ATBI] and its manager employees that they receive that salary and just that salary for no matter how many hours they were required to work in a given work week." (Stuart Dep., Ex. 1 to Doc. 83, at 17.) Even more compelling, Stuart testified that a salary of $1300 month only represented compensation for "40 hours" of work. (*Id.* at 86.) Stuart agreed that "the $1300 a month . . . didn't represent any and all hours [an employee] had to work but only basically a 40-hour or five-shift work week." (*Id.*) In response to this evidence, ATBI simply points to Kaiser's testimony quoted above and the relevant job descriptions. In light of Stuart's clear testimony, however, such evidence is insufficient to create a question of

37

fact.  Kaiser's testimony, in the Court's view, has nothing to do with compensation but simply reflects an understanding that she must work in excess of forty hours if needed.  The job descriptions also do not mention compensation.  Further, even assuming the job descriptions did mention compensation, they are of no value in light of Stuart's testimony as to the actual understanding of the parties.  ATBI has not created any genuine question of fact as to whether ATBI and Plaintiffs had a clear, mutual understanding that their salary represented compensation for hours worked in excess of forty hours per week.  Therefore, Plaintiffs are entitled to summary adjudication that the FWW method was not available to ATBI as a method of overtime payment.

      E.    <u>Untimely Consent of Plaintiff Bayack</u>

One opt-in Plaintiff, Bayack, filed her Consent the first business day following the Court's deadline.  In light of the relatively short period the Court provided Plaintiff to obtain Consents (thirty days), the Court finds good cause to allow Bayack to proceed with her claims.  Therefore, ATBI's motion for summary judgment as to Bayack is denied.

**IV.    ATBI's Motion in Limine to Prohibit Plaintiffs from Testifying Regarding Damages**

ATBI also moved in limine to exclude Plaintiffs from testifying as to their proposed damages because (1) Plaintiffs are admittedly "estimating" the amounts of overtime worked, and (2) Plaintiffs' damages calculations require specialized knowledge and must be presented by an expert.

"An employee seeking to recover unpaid minimum wages or overtime under the FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'" *Brock v. Seto*, 790 F.2d 1446, 1447-48 (9th Cir. 1986) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)).  However, where an employer violates its statutory duty to keep proper records of hours, as ATBI has done here, an employee carries this burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient

evidence to show the amount and extent of that work as a matter of a just and reasonable inference." *Id.* at 1448 (internal quotations omitted). "The burden then shifts to the employer to show the precise number of hours worked or to present evidence sufficient to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (internal quotations omitted). "If the employer fails to make such a showing, the court may then award damages to the employee, even though the result be only approximate." *Id.* (internal quotations omitted). The policy underlying such rule is that, when an employer fails to keep sufficient time records, the "solution is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Id.* (internal quotations omitted).

In order to satisfy their burden of proof as to damages, Plaintiffs seek to testify regarding the number of hours they worked. During discovery, all Plaintiffs provided responses to interrogatories asking for the month, day, and year that the alleged overtime was worked and the amount of hours of overtime worked. Such responses state:

> I do not recall nor did I keep contemporaneous time records of when I worked overtime. However, based upon my best estimate, I worked an average [of] approximately [number] hours per week on average for each week I was employed by ATBI.

(*See, e.g.*, Ex. 2 to Doc. 113.) The Court concludes that such testimony is in accordance with applicable law where an employer fails to require or keep time records. There is no reason to wholly prevent Plaintiffs from testifying regarding their "best estimate" of hours worked, notwithstanding that they do "not recall" precise dates, months, and years the overtime was worked. ATBI's arguments go to the reasonableness of the inference that may or may not be created by Plaintiffs' trial testimony and not to the admissibility of Plaintiffs' testimony. Any in limine order precluding

Plaintiffs from attempting to prove the overtime hours they worked is contrary to the spirit and letter of the Supreme Court's pronouncement in *Anderson*.

Plaintiffs did not employ a damages expert.  ATBI argues that any testimony by Plaintiffs regarding the damage calculations set forth in their interrogatory responses is inadmissible lay opinion testimony under Federal Rule of Evidence 701 because calculating damages is not within Plaintiffs' personal observation or knowledge.  As an initial matter, Plaintiffs may clearly testify as to facts within their personal knowledge that are components of the damages calculation (hours worked, salary, bonuses, and commissions).  The Court also finds that Plaintiffs may testify as to total amounts owed, which are based upon facts within their knowledge and a fairly simple mathematical calculation, without crossing into "specialized knowledge."  To the extent Plaintiffs' math is faulty, this is a subject of cross examination.  If and to the extent Plaintiffs' calculation method is faulty, this is a matter to be resolved by jury instructions.[35]  However, as an evidentiary matter, the Court finds that Plaintiffs may testify as to facts supporting their damages calculations and the total amounts they allege to be owed.  *See generally Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1267-68 (11th Cir. 2008) (explaining that, at trial, plaintiffs testified as to facts supporting damages awards such as salaries and hours worked and jury was instructed on how to calculate regular rate of pay and damages) (reversing jury verdict because it was "outside the bounds" of evidence and jury instructions as to proper calculation); *Sanders v. Elephant Butte Irrigation Dist. of N.M,*, 112 F.3d 468, 472 (10th Cir. 1997) (explaining, in FLSA overtime case where employer failed to keep time records, "the court was entitled to rely upon figures presented by plaintiff, supported by his evidence").

---

[35]  For purposes of this motion in limine, ATBI does not point to any flaws in the calculation method but simply argues that such a calculation is beyond Plaintiffs' abilities.

**V.      ATBI's Motion to Limit Damages to Amounts Set Forth in DOL Summary**

ATBI has also moved for summary adjudication that, for any Plaintiffs listed in the DOL

Summary, such Plaintiffs' damages must be limited to the amounts set forth in the DOL Summary,

*i.e.*, based on a 48-hour workweek.   Therefore, ATBI not only seeks to *preclude* Plaintiffs from

testifying regarding their estimated number of overtime hours, *see supra* Part IV, ATBI also seeks

to *require* Plaintiffs to present the DOL Summary in their case in chief as their evidence of damages.

Although ATBI styled its motion as one to "limit" Plaintiffs' damages to amounts set forth in the

DOL Summary, Plaintiffs have not presented or given any indication that they intend to present the

DOL Summary as evidence of their damages.   The Court is aware of no legal basis for requiring

Plaintiffs to present any damages evidence against their will.   ATBI's reliance upon *Hodgson v.*

*Humphries*, 454 F.2d 1279 (10th Cir. 1972), is misplaced.   In that case, the Tenth Circuit affirmed

a trial court's admission of a DOL investigator's computation sheets into evidence in a case brought

by the Secretary of Labor.   *Id.*   The Secretary of Labor, as the plaintiff, presented the investigator's

testimony, in conjunction with the employees' testimony regarding hours worked, wages received,

and dates of employment.   *Id.*   The court held that, in the absence of any countervailing evidence

by the *defendant* employer, "it certainly wasn't error for the trial court to accept [the investigator's]

computations as to the exact amount of compensation withheld."   *Id.*   Here, Plaintiffs contend that

the DOL essentially short-changed them, and they have exercised their right to sue, rendering

*Hodgson* inapposite to the facts presented.   In short, at this stage of the proceedings, there is nothing

to "summarily adjudicate" about the DOL Summary in relation to Plaintiffs' damages evidence.

Assuming ATBI can lay a proper foundation and the Court does not issue any in limine

ruling preventing its introduction, ATBI may seek to utilize the DOL Summary to impeach Plaintiffs

as to hours worked in excess of that estimated by the DOL.[36]  But the Court finds no reason in fact or law to "limit" Plaintiffs' damages to those set forth in the DOL Summary, thereby precluding Plaintiffs from presenting their own testimony of hours worked.

## VI.    Disposition of Other Plaintiffs' Claims

ATBI moved for dismissal as to original Plaintiff Laughlin, who never filed a Consent. ATBI also moved for summary adjudication as to any opt-in Plaintiffs who failed to submit discovery responses and damages calculations.   Plaintiffs stated that they did not object to "dismissal" of these Plaintiffs but did not state whether they objected to dismissal with prejudice and/or summary adjudication.

Laughlin was originally named, was instructed to file a consent by a required date, and failed to do so.  Certain opt-in Plaintiffs filed consents but then failed to provide discovery responses.  In both instances, Plaintiffs initiated claims, caused ATBI to expend resources, but then failed to comply with the Court's deadlines and/or adequately prosecute their claims.  Therefore, the Court finds that dismissal with prejudice pursuant to Rule 41(b) is the appropriate disposition of their claims.

## VII.    Conclusion

Defendant's Motion for Decertification of Collective Action (Doc. 86) is DENIED; Defendant's Motion to Limit Plaintiffs' Damages (Doc. 87) is DENIED; Defendant's Motion in Limine to Prohibit Plaintiffs from Testifying as to Alleged Damages (Doc. 113) is DENIED; and

---

[36]  Plaintiffs contend that the DOL Summary is inadmissible as hearsay or a settlement offer.  However, Plaintiffs have not formally moved in limine to exclude such evidence, and these issues are not properly before the Court.  The Court will allow Plaintiff to file a motion in limine on this topic, if desired, no later than Wednesday, December 15, 2010.  ATBI shall respond no later than Wednesday, Dec. 22, 2010.  No reply shall be allowed.

Defendant's Amended First Motion for Partial Summary Judgment (Doc. 104) is DENIED. Plaintiffs' Motion for Partial Summary Judgment (Doc. 83) and Defendant's Second Motion for Partial Summary Judgment (Doc. 85) are GRANTED IN PART AND DENIED IN PART as set forth below:

Waiver

ATBI is granted summary adjudication as to Colvin for claims accruing prior to July 7, 2008. Plaintiffs are granted summary adjudication as to all other twenty-five Plaintiffs and the remaining claims of Colvin.

§ 213(a)(1) Exemptions

Plaintiffs are granted summary adjudication as to all claims accruing prior to October 2008. Neither party is granted summary adjudication as to claims accruing after October 2008.

FWW Method

Plaintiffs are granted summary adjudication as to all claims.

For purposes of clarity on the record, Plaintiffs are ordered to submit a Notice summarizing the Court's disposition of all individuals' claims who are listed in the case caption but who will not proceed to trial as to part or all of their claims.  Based on the Notice, the Court will enter a subsequent Order clarifying the disposition of these individuals' claims.

Plaintiffs' First Amended *Daubert* Motion to Exclude Testimony of Kimberly Beaucourt (Doc. 109) and ATBI's Motion to Exclude Supplemental Interrogatory Responses (Doc. 131) are set for hearing on January 4, 2011, at 10:30 am.

**IT IS SO ORDERED** this 9th day of December, 2010.

**TERENCE KERN**
**United States District Judge**

43